UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Bankruptcy No. 13 B 07724 |
| | ) Chapter 7 |
| SPRINGHILL PARTNERS LLC, | ) Judge Donald R. Cassling |
| | ) |
| Debtor. | ) |
| | ) |
| RICHARD M. FOGEL, not individually but as Chapter 7 trustee of the bankruptcy estate of Springhill Partners LLC, | ) ) ) Adversary No. 14 A 00349 |
| | ) |
| Plaintiff. | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN LIVADITIS, et al., | ) |
| | ) |
| Defendants. | ) |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II, AND III OF THE FIRST AMENDED COMPLAINT**

This matter comes before the Court on the Motion of Richard M. Fogel, not individually but solely in his capacity as Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Springhill Partners LLC, for Summary Judgment with respect to Counts I, II, and III of the First Amended Complaint against Defendant John Livaditis ("Mr. Livaditis") pursuant to Federal Rule of Civil Procedure 56, made applicable here by Federal Rule of Bankruptcy Procedure 7056. Mr. Livaditis failed to respond to the Motion for Summary Judgment.

The Court reviewed the Motion for Summary Judgment, including all of the exhibits, as well as the Statement of Material Facts to Which There Is No Genuine Issue Pursuant to Local Rule 7056-1 filed by the Trustee. The Court hereby submits its proposed findings of fact and conclusions of law and recommends that the District Court: (1) grant the Trustee's Motion for

Summary Judgment against Mr. Livaditis on Counts I and II of the First Amended Complaint; (2) enter judgment in favor of the Trustee and against Mr. Livaditis in the amount of $888,936.44; and (3) deny The Trustee's Motion for Summary Judgment on Count III of the First Amended Complaint.

## I. JURISDICTION AND PROCEDURE

### A. Subject Matter Jurisdiction

The Court has jurisdiction over the bankruptcy case of Mr. Livaditis pursuant to 28 U.S.C. § 1334(a) and Internal Operating Procedure 15 of the United States District Court for the Northern District of Illinois. District courts may refer "proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy court. 28 U.S.C. § 157(a); *Exec. Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2171 (2014).

Mr. Livaditis admitted in his Answer and Affirmative Defenses to the First Amended Complaint that this Court has jurisdiction over this matter and that it is a core proceeding under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), (b)(1), (b)(2)(A), (H), and (O). (Motion for Summary Judgment, Ex. No. 2, ¶ 8.)[1] However, he did not consent to the Court's entry of a final judgment in this matter. This Court has an independent duty to ensure that it has subject matter jurisdiction. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 593 (2004). Neither the parties nor their lawyers can waive subject matter jurisdiction. *Dexia Credit Local v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010).

Bankruptcy courts have statutory authority to issue final orders and judgments only in "core proceedings arising under title 11, or arising in a case under title 11." *STC, Inc. v. Global Traffic Techs., LLC,* No. 15 C 0037, 2015 WL 1042431, at *2 (S.D. Ill. Mar. 6, 2015) (quoting

---

[1] All citations hereafter refer to the Trustee's Motion for Summary Judgment.

28 U.S.C. § 157(b)(1)). "Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law." *In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997). In other words, "[a] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).

As to claims that are only "related to" the bankruptcy proceedings (i.e., a non-core claim), a bankruptcy court may not enter final judgment without the parties' consent but shall submit proposed findings of fact and conclusions of law to the district court for de novo review and entry of final judgment. *See* 28 U.S.C. § 157(c)(1); *STC*, 2015 WL 1042431, at *2. A proceeding is non-core if it "does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy." *Barnett*, 909 F.2d at 981. Such a proceeding "may be related to the bankruptcy because of its potential effect, but . . . it is . . . [a] non-core proceeding." *Id.*

The Court finds that Counts I, II, and III of the First Amended Complaint are not within the core jurisdiction of the Court as defined in 28 U.S.C. § 157(b)(2). However, those counts are within the "related to" jurisdiction under 28 U.S.C. § 157(a). The claims do not invoke a substantive right created by the Bankruptcy Code; rather, they are state law claims. Counts I, II, and III are non-core related proceedings because resolution of these claims would affect the amount of property available for distribution or the allocation of property among Springhill's

creditors. The Trustee seeks a money judgment against Mr. Livaditis for the benefit of Springhill's estate.

This Court also finds that Counts I, II, and III of the First Amended Complaint assert causes of action that are distinct and can be severed from the remaining counts of the First Amended Complaint.

Because Counts I, II, and III of the First Amended Complaint are not within the core jurisdiction of the bankruptcy court (as defined in 28 U.S.C. § 157(b)(2)), but fall within the "related to" jurisdiction of the Court (pursuant to 28 U.S.C. § 157(a)), in accordance with 28 U.S.C. § 157(c)(1), the Court submits the following findings of fact and conclusions of law to the District Court. To the extent a conclusion of law is improperly characterized as a finding of fact, it should be considered a conclusion of law. To the extent a finding of fact is improperly characterized as a conclusion of law, it should be considered a finding of fact. *See In re Piper's Alley Co.*, 69 B.R. 382, 384 (N.D. Ill. 1987).

### B. Summary Judgment Procedure

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056). On a motion for summary judgment, "the court has one task and one task only: to decide, based on the evidence of the record, whether there is any material dispute of fact that requires trial." *Egan v. Freedom Bank*, 659 F.3d 639, 643 (7th Cir. 2011). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The plaintiff, if it is the movant, can meet this burden by adducing evidence sufficient to make out a prima facie case on each element of its claim. *See McKinney v. Am. River Transp. Co.*, 954 F. Supp.2d 799, 803 (S.D. Ill. 2013). If the

plaintiff accomplishes this, then the defendant must adduce evidence to show some genuine issue of fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Rule 56 describes both the standards and procedures governing summary judgment motions. *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 397 (7th Cir. 2012). The Local Rules adopted by the bankruptcy court in this district set out additional summary judgment procedures.

Under Local Rule 7056-1, the movant must submit a separate statement of material facts consisting of short numbered paragraphs with references to evidentiary material supporting each statement. L.R. 7056-1(A), (B). The Trustee has complied with this requirement.

The opposing party must then respond to each of the movant's statements of fact, admitting or denying the statement, and including "in the case of disagreement," references to evidentiary material. L.R. 7056-2(A)(2)(a). Failure to respond has serious consequences. In particular, facts not denied, or not denied in a permissible way, are deemed admitted. L.R. 7056-1(C), L.R. 7056-2(B); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Trial judges are entitled to enforce this requirement strictly, given "the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law. . . ." *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011).

Mr. Livaditis did not respond to the Trustee's Statement of Material Facts to Which There Is No Genuine Issue Pursuant to Local Rule 7056-1, which was submitted in compliance with Local Rule 7056-1(A). Because he did not respond, all of the facts in the Trustee's Statement of Material Facts are deemed admitted.

Further, it is well-established that summary judgment may be properly granted on the basis of unanswered requests for admissions if the facts as admitted are dispositive. *Delic v.*

5

*Brown (In re Brown)*, Bankr. No. 08 B 21786, Adv. No. 08 A 00936, 2009 WL 2461241, at *4 (Bankr. N.D. Ill. Aug. 11, 2009) (citing *Hasbrook v. Citibank & Educ. Credit Mgmt. Corp. (In re Hasbrook)*, 289 B.R. 375, 378 (Bankr. N.D. Ind. 2002)). Rule 36(a)(3) of the Federal Rules of Civil Procedure, made applicable here by Federal Rule of Bankruptcy Procedure 7036, provides that a party must answer each matter for which an admission is requested within thirty days after being served or the matter is deemed admitted. Fed. R. Civ. P. 36(a)(3); *see also Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 607 (7th Cir. 2008). Because Mr. Livaditis failed to respond to the Requests to Admit (Ex. No. 3) within thirty days, he is deemed to have made the requested admissions. Even if Mr. Livaditis had responded to the Trustee's Requests to Admit within thirty days, the evidence presented by the Trustee in his Motion for Summary Judgment and his Statement of Material Facts to Which There Is No Genuine Issue Pursuant to Local Rule 7056-1 still would have led this Court to enter these proposed findings of fact and conclusions of law.

## II. FINDINGS OF FACT

Springhill Partners LLC ("Springhill") is an Illinois general partnership formed in 1991, which is a single purpose entity that owned and operated a commercial mall commonly known as "Spring Hill Market Place" in Carpentersville, Illinois (the "Property"). (Ex. No. 2, ¶ 1.) Springhill is made up of five general partners: (1) Mr. Livaditis; (2) Peter Cotsirilos; (3) Sarkis Tashjian; (4) the John Sellis Revocable Trust; and (5) the Angelo Sellis Revocable Trust. (*Id.*) Mr. Livaditis is the managing general partner of Springhill. (*Id.*)

Since 2010, Springhill has experienced significant financial difficulties, leading it to file more than one petition for relief under Chapter 11 of the Bankruptcy Code. (Ex. No. 2, ¶ 2.) Most recently, on February 27, 2013, Springhill filed a Chapter 11 petition. (*Id.*)

On April 11, 2013, Richard M. Fogel was appointed the Chapter 11 Trustee for the estate of Springhill. (Ex. No. 2, ¶ 3.) On May 14, 2013, this Court authorized the Trustee to conduct a public auction of the Property. (*Id.*) The Trustee conducted the auction of the Property on July 12, 2013. (*Id.*) An order approving the sale of the Property was entered by the Court on July 16, 2013. (*Id.*) The Trustee closed the sale of the Property on July 30, 2013, and paid Berkadia Commercial Mortgage LLC the sum of $5,480,844.21 from the proceeds of the sale in partial payment of its secured claim against Springhill. (*Id.*) On August 27, 2013, this case was converted to Chapter 7 and the Trustee was appointed as the Chapter 7 Trustee for Springhill's estate. (*Id.*)

The Trustee seeks a judgment against Mr. Livaditis on Counts I, II, and III of the First Amended Complaint in the amount of $888,936.44 based on the following uncontested facts taken from the Rule 7056-1 Statement, which incorporates the Trustee's Requests to Admit.[2]

Mr. Livaditis has been the managing general partner of Springhill from its inception until at least March 26, 2015. (Ex. No. 3, ¶ 1 and Ex. No. 3(L).) On March 5, 2010, Springhill purchased and paid more than $500,000 for two certificates of deposit (the "CDs") from Western Springs National Bank.[3] (Ex. No. 3, ¶ 3 & Ex Nos. 3(N) & 3(O).) In addition to purchasing the CDs for Springhill (with Springhill funds), Mr. Livaditis borrowed $548,307.92 from Western

---

[2] The Trustee's Requests to Admit were served on Mr. Livaditis on March 26, 2015. (Ex. No. 3.) He failed to answer those Requests to Admit within the thirty-day period required under Federal Rule of Civil Procedure 36(a)(3). Because Mr. Livaditis failed to respond to the Requests to Admit within thirty days, he is deemed to have made the requested admissions.

[3] The Trustee's Requests to Admit included both a request to admit facts as well as a request to admit the genuineness of documents. The documents provide additional and sufficient proof that Mr. Livaditis owes Springhill $888,936.44 even if the Trustee's Requests to Admit had not been admitted. The documents are attached to the Trustee's Requests to Admit (and to the Trustee's Motion for Summary Judgment) as Ex. Nos. 3(A) - 3(R). When these findings of fact refer to uncontested facts, the second citation refers to the documents themselves.

Spring National Bank in his own name. (Ex. No. 3, ¶ 2 & Ex. 3(P).) Mr. Livaditis then pledged Springhill's two CDs as collateral for the loan issued to him personally. (Ex. No. 3, ¶ 4 & Ex. No. 3(Q).)

Springhill's CDs were eventually used to pay off Mr. Livaditis' loan at Western Springs National Bank. (Ex. No. 3, ¶ 5 & Ex. No. 3(R).) Specifically, $549,039 of the proceeds from Springhill's CDs were used to pay off the loan owed by Mr. Livaditis personally (the "CD transaction"). (Ex. No. 3, ¶ 6 & Ex. No. 3(A).) As a result, Mr. Livaditis owes this amount to Springhill's estate.

Mr. Livaditis was in charge of keeping the books and records of Springhill and agreed to keep proper and complete books of account for Springhill. (Ex. No. 3, ¶¶ 12-14 & Ex. No. 3(L), ¶ 10.1.) The books and records of account for Springhill "booked" and recorded the CD transaction as a debt from Mr. Livaditis to Springhill in the amount of $549,039. (Ex. No. 3, ¶ 20 & Ex. No. 3(A).)

Springhill had an immediate, absolute, and unconditional right to the CDs when Mr. Livaditis pledged the CDs as collateral for the loan he secured from Western Spring National Bank, as well as when he used the proceeds from Springhill's CDs to pay off that loan. (Ex. No. 3, ¶ 8 & Ex. Nos. 3(A), 3(N) - (R).)

Mr. Livaditis owes Springhill a total of $888,936.44. (Ex. No. 3, ¶ 19 & Ex. Nos. 3(A) - (R).) The amount Mr. Livaditis owes to Springhill consists of the following: (1) $549,039 from the redemption of the two CDs (paid for and owned by Springhill); (2) recorded client transactions of $100,000; (3) $38,872.44 for a "clear transfer account"; (4) a $222,025 loan receivable; and (5) a credit of $21,000 based on a draw to which Mr. Livaditis claimed that he was entitled. (Ex. No. 3, ¶ 20 & Ex. Nos. 3(A) - (R).) The records and books of account of

Springhill reflect that Mr. Livaditis owes Springhill a total of $888,936.44. (Ex. No. 3, ¶ 15 & Ex. Nos. 3(A) & (B).)

Mr. Livaditis provided the Trustee with business records of Springhill which confirm that he owes Springhill $888,936.44. (Ex. No. 3, ¶ 16 & Ex. Nos. 3(A) and (B).) Specifically, the general ledger of Springhill reflects and confirms that Mr. Livaditis owes Springhill $888,986.44. (Ex. No. 3, ¶ 17 & Ex. No. 3(A).) The balance sheet of Springhill also reflects and confirms that Mr. Livaditis owes Springhill $888,936.44. (Ex. No. 3, ¶ 18 & Ex. No. 3(B).)

In the Springhill Partnership Agreement, Mr. Livaditis agreed that the decision of the public accountant with respect to computations and determinations of profits, losses, and distributions would be final and binding. (Ex. No. 3, ¶ 9 & Ex. Nos. 3(A) - (M).) The public accountant determined that Mr. Livaditis owes Springhill a total of $888,936.44, which includes the $549,039 from the two CDs. (Ex. No. 3, ¶ 10 & Ex. Nos. 3(A) - (C) & (E) - (F).)

Springhill's 2012 federal income tax return filed with the Internal Revenue Service contains a Schedule of Other Current Assets (Form 1065, Schedule L, Line 6). That Schedule is consistent with the books and records of Springhill and includes Mr. Livaditis' debt to Springhill in the amount of $888,936.44.[4] (Ex. No. 3, ¶ 21 & Ex. No. 3(C).) In Springhill's tax return, Mr. Livaditis declared, under penalty of perjury, that he examined Springhill's electronic return of partnership income and accompanying schedules and statements and to the best of his knowledge and belief they were true, complete, and accurate. (Ex. No. 3, ¶ 22 & Ex. No. 3(D).)

---

[4] In the Federal Statements section of Springhill's 2012 tax return (Ex. No. 3(C)), Statement 1- Form 1065, Schedule L, line 6 - Other Current Assets, Springhill's tax return represents that there are receivables in the amount of $929,436. This amount includes the $888,936 owed by Mr. Livaditis which is contained in the general ledger (Ex. No. 3(A)) and the balance sheet (Ex. No. 3(B)) of Springhill, along with other loan receivables from Peter Cotsirilos in the sum of $5,500 and Just Hot Dogs in the amount of $35,000. (Ex. Nos. 3(A) & (B).) In other words, when the $888,936 owed by Mr. Livaditis is added to the $35,000 owed by Just Hot Dogs and the $5,500 owed by Peter Cotsirilos, the total equals $929,436.

9

As discussed above, there is no genuine issue of material fact that Mr. Livaditis owes Springhill $888,936.44, and the Court therefore finds that he owes Springhill this amount.

### III. CONCLUSIONS OF LAW

#### A. Count I of the First Amended Complaint—Account Stated

Count I of the First Amended Complaint sets forth a claim for an account stated against Mr. Livaditis and seeks judgment against him in the sum of $888,936.44.

An account stated has been defined as an agreement between parties who have had previous monetary transactions that the account representing those transactions is true and that the balance stated is correct, together with a promise, express or implied, for the payment of such balance. *Patrick Eng'g, Inc. v. City of Naperville*, 976 N.E.2d 318, 336 (Ill. 2012); *see also U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 333 (7th Cir. 2009). In other words, an account stated is a final determination of the amount of an existing debt, and an action for an account stated is founded on a promise to pay that debt, not the original promise to pay under the contract. *Patrick Eng'g*, 976 N.E.2d at 336.

"'[A]n account stated cannot be created merely by furnishing an account unless the creditor or debtor specifically intends to establish a balance due or to agree upon a final settlement to date between the parties.'" *Id.* (quoting *Toth v. Mansell*, 566 N.E.2d 730, 735 (Ill. App. Ct. 1990)). An account stated must demonstrate the mutual assent of both the creditor and the debtor. *Toth*, 566 N.E.2d at 734-35. The meeting of the minds regarding the accuracy of an account is usually the result of one party rendering a statement of account to which the other party acquiesces. *Id.* at 735. The form of acquiescence is not critical, however, and the meeting of the minds may be inferred from the conduct of the parties and the circumstances of the case. *Id.*; *see also Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1138 (7th Cir.

2009).

The Court finds that an account has been stated against Mr. Livaditis in the amount of $888,936.44. He agreed and acquiesced to the validity of this debt in many ways. First, Mr. Livaditis agreed to keep proper and complete books of account for Springhill. (Ex. No. 3, ¶¶ 12 - 14 & Ex. No. 3(L), ¶ 10.1.) The books of account for Springhill kept by Mr. Livaditis reflect that he owes Springhill $888,936.44. (Ex. No. 3, ¶ 15.) Second, Mr. Livaditis also agreed that the decision of the public accountant would be final and binding. (Ex. No. 3, ¶ 9.) The public accountant retained by Springhill determined that Mr. Livaditis owes Springhill $888,936.44. (Ex. No. 3, ¶ 10 & Ex. Nos. 3(A) - (C) & (E) - (F).) Third, Springhill's tax returns, which Mr. Livaditis swore, under penalty of perjury, were true, also admit and confirm that he owes Springhill $888,936.44. (Ex. No. 3, ¶¶ 21 & 22 & Ex. Nos. 3(C) - (F).)

Therefore, there is no genuine issue of material fact and the Trustee is entitled to judgment as a matter of law. The Court finds that an account has been stated against Mr. Livaditis in the amount of $888,936.44 and judgment should be entered summarily in favor of the Trustee and against him in that amount on Count I of the First Amended Complaint.

### B. Count II of the First Amended Complaint—Failure to Repay Loans

Alternatively, Count II of the First Amended Complaint alleges that Mr. Livaditis failed to repay the financial transactions that were recorded and "booked" as loans from Springhill in the amount of $888,936.44. Specifically, the following transactions were recorded and "booked" as loans from Springhill to Mr. Livaditis: (1) the $549,039 from the redemption of the two CDs paid for and owned by Springhill that were used to pay a loan in Mr. Livaditis' name, individually; (2) recorded client transactions of $100,000; (3) a $38,872.44 "clear transfer account;" (4) a $222,025 loan receivable; and (5) a credit of $21,000 based on a draw claimed by

11

Mr. Livaditis. (Ex. No. 3, ¶ 20 & Ex. No. 3(A) – (R).) Each of these transactions were recorded as loans and were confirmed by the books and records kept by Mr. Livaditis for Springhill as well as Springhill's tax returns signed under oath by Mr. Livaditis. (Ex. No. 3, ¶¶ 12-22 & Ex. Nos. 3(A) - (F).) These loans have not been repaid.

The Court finds that there is no genuine issue of material fact and the Trustee is entitled to judgment as a matter of law. Accordingly, the Trustee is entitled to a judgment against Mr. Livaditis in the amount of $888,936.44 on Count II of the First Amended Complaint.

### C. Count III of the First Amended Complaint—Conversion

Alternatively, Count III of the First Amended Complaint alleges that Mr. Livaditis converted the property of Springhill and a judgment should be entered against him in the amount of $888,936.44.

Conversion is the wrongful possession or disposition of another's property. Specifically, it is an act of willful interference, without lawful justification, with an item of property in a manner inconsistent with another's right, whereby that other person is deprived of the use and possession of the property. *In re Karavidas*, 999 N.E.2d 296, 309 (Ill. 2013)

In order to prove a claim of conversion, the plaintiff must show (1) a right in the property, (2) a right to the immediate possession of the property, which is absolute, unconditional, and not dependent upon the performance of some act, (3) a deprivation of the right by the defendant's unauthorized and wrongful assumption of control, dominion, or ownership, and (4) a demand for possession of the property. *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008); *Schaul v. Ludwig (In re Ludwig)*, 508 B.R. 48, 57 (Bankr. N.D. Ill. 2014). "[A] demand is unnecessary to establish a conversion where another independent action of conversion is established." *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1253 (Ill. App. Ct. 1990).

Illinois law limits the circumstances in which a plaintiff may maintain an action for the conversion of money. *Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988). "[T]he general rule is that conversion will not lie for money represented by a general debt or obligation." *In re Thebus*, 483 N.E.2d 1258, 1261 (Ill. 1985). Money may be the subject of a conversion action if it is capable of being described as a "specific chattel." *Id.*; *see also Eggert*, 839 F.2d at 1264. In order to satisfy this requirement, the plaintiff must have a "right to a specific fund or specific money in coin or bills." *Mid–America Fire & Marine Ins. Co. v. Middleton*, 468 N.E.2d 1335, 1339 (Ill. App. Ct. 1984). Where the plaintiff's right is merely to "an indeterminate sum" of money, a conversion action cannot successfully be maintained. *Id.*; *see also Eggert*, 839 F.2d at 1265. Instead, a defendant wrongfully depriving a plaintiff of an indeterminate sum of money is liable for a debt rather than a conversion. *Eggert*, 839 F.2d at 1265.

The Court finds that the Trustee has shown that Springhill had a right to a specific fund or specific money. Springhill had an immediate, absolute, and unconditional right to its assets which were converted by Mr. Livaditis. For example, Springhill had an immediate, absolute, and unconditional right to the CDs when Mr. Livaditis pledged the CDs as collateral for the loan made to him (not Springhill) as well as when he used the proceeds from Springhill's CDs to pay off his personal loan. (Ex. No. 3, ¶ 8 & Ex. Nos. 3(A), 3(N) - (R).) Similarly, Springhill held the right to possess its other assets (which make up the remainder of the $888,936.44) when Mr. Livaditis assumed control, dominion, and/or ownership over them.

The Court finds, however, that the Trustee has failed to allege or demonstrate that a demand was made for the return of the money. Nor is the Trustee able to avoid the demand requirement by establishing that there was an independent act of conversion by Mr. Livaditis, because the Trustee failed to make that showing.

Accordingly, the Court finds that the Trustee has not proven all of the necessary elements of a claim for conversion. As a result, the Trustee is not entitled to judgment as a matter of law. Thus, the Court finds that summary judgment is not appropriate with respect to Count III of the First Amended Complaint.

## IV. CONCLUSION

Based on the foregoing reasons, this Court recommends that the District Court: (1) grant the Trustee's Motion for Summary Judgment against Mr. Livaditis on Counts I and II of the First Amended Complaint; (2) enter judgment in favor of the Trustee and against Mr. Livaditis in the amount of $888,936.44; and (3) deny the Trustee's Motion for Summary Judgment on Count III of the First Amended Complaint.

The above constitutes the Court's proposed findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 9033.

**ENTERED:**

DATE: **AUG - 3 2015**

_____
**Donald R. Cassling**
**United States Bankruptcy Judge**